**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4512
_____

UNITED STATES OF AMERICA

v.

FRANK THOMPSON
a/k/a JOHN COOPER
a/k/a HANK THOMPSON,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-12-cr-00418-005
District Judge: The Honorable Juan R. Sanchez

_____

Argued February 29, 2016

Before: McKEE, *Chief Judge*, SMITH, and HARDIMAN, *Circuit Judges*

(Opinion Filed:  May 5, 2016)


Eric B. Henson                **[ARGUED]**
Robert Zauzmer
Virginia P. Pratter
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

*Counsel for Appellee*

Laurence A. Narcisi, III          **[ARGUED]**
Suite 1910
100 South Broad Street
Land Title Building
Philadelphia, PA  19110
          *Counsel for Appellant*

———————

OPINION[*]

———————

SMITH, *Circuit Judge.*

This appeal stems from a stash-house robbery sting operation that took place in Philadelphia from June to July of 2012.  Of the eight individuals caught in the operation, three pled guilty prior to trial.[1]  Following their convictions in a joint trial, the remaining five,[2] including Appellant Frank Thompson, filed separate appeals, each contesting various issues relating to their convictions (and, for some,

———————

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] These were Najee Murray, Lafayette Rawls, and Jamie Dales.

[2] Thompson's co-defendants at trial were Marlon Graham, Kareem Long, Kenneth Parnell, and Robert Lamar Whitfield.  Separate opinions resolving each co-defendant's appeal have been, or will be, filed. *See United States v. Graham*, No. 14-3717; *United States v. Long*, No. 14-3703; *United States v. Whitfield*, No. 14-3345; *United States v. Parnell*, No. 14-4100.

their sentences).  For the reasons explained below, we will uphold Thompson's convictions.

## I.

In June of 2012, a confidential informant (CI) contacted Robert Lamar Whitfield and asked him for help getting in touch with a mutual acquaintance so that the CI could invite the acquaintance to rob a drug stash house.  Whitfield instead volunteered to take care of the robbery himself, claiming that he had significant experience robbing stash houses in the past.  The CI then put Whitfield in touch with the CI's "uncle," who turned out to be an undercover agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF).  Whitfield met with the agent on several occasions to discuss the robbery.  To facilitate the crime, Whitfield recruited others to join in the scheme, who in turn recruited others, including Thompson.

Plans came to a head on July 18 when Thompson and seven others met with the undercover agent in the parking lot of a Hilton Hotel where the agent once again told those present about the robbery, including that he expected ten kilograms of cocaine to be inside the stash house, and that he expected the house to be guarded by two men, one with a pistol and the other within reach of an assault-style rifle.  The agent then made clear that any who wished to withdraw should do so at that time.  After no one expressed hesitation about the plan, the group

3

proceeded to a junkyard, presumably to check out a van that the agent was to have rented for use during the robbery. There, the group continued making preparations for the robbery, with several individuals arranging and inspecting firearms and distributing gloves to all present. At the undercover agent's signal, law enforcement officials swarmed the yard and arrested the group.

A grand jury returned an indictment charging each of the co-conspirators with multiple inchoate Hobbs Act robbery and drug distribution offenses, as well as with the crime of carrying a firearm during and in relation to a crime of violence or a drug trafficking crime. Additionally, Thompson, Long, and Dales were charged with being felons in possession of a firearm, though Thompson and Long were both acquitted at trial on this count. The jury convicted Thompson and the four other defendants on all counts for which they were mutually charged. Thompson was subsequently sentenced to 252 months in prison. He then timely filed this appeal.[3]

## II.

Thompson argues on appeal that there was insufficient evidence presented at trial to support his convictions on the Hobbs Act and cocaine possession

_____

[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

conspiracy charges.[4]  We review a challenge to the sufficiency of the evidence "from the perspective of a reasonable juror."  *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc).  We must uphold the jury's verdict "as long as it does not 'fall below the threshold of bare rationality.'"  *Id.* (quoting *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012)).  To convict someone of a conspiracy crime, the jury must find the following elements: "(1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal."  *Id.* at 425.  Importantly, the prosecution need not adduce any direct evidence to prove intent; circumstantial evidence may suffice. *Id.* at 431.

We conclude that the evidence of Thompson's guilt on the conspiracy charges was sufficient to support the jury's verdict.  Although the evidence against Thompson was perhaps not as strong as against some of his co-defendants, he nonetheless attended the "informational" meeting with the undercover agent at the Hilton and then proceeded to the junkyard with the others.  He also expressed no hesitation about participating in the scheme, even after the agent gave everyone the opportunity to back out.  Finally, he openly discussed the robbery with one of his

---

[4] Although the subheading of his brief addressing the insufficiency claim mentions the attempt charges, the substance of his arguments clearly centers on sufficiency of the evidence for the conspiracy charges.  We will therefore treat as forfeited any insufficiency claims going to the attempt charges.

co-conspirators. Thus, his assertion that his "involvement" was marked by "inaction and silence" rings hollow.[5]

## III.

We will affirm the District Court's judgment as to Thompson.

---

[5] Thompson raises a couple other issues that some or all of his co-defendants have also raised. First, he claims that the District Court should have granted the defendants' motion for judgment of acquittal because the fictitious stash-house robbery could not possibly "affect[] commerce" as required for conviction under the Hobbs Act. 18 U.S.C. § 1951(a). Second, Thompson argues that the District Court should have granted the motion for discovery to pursue a claim of selective enforcement. We rejected these or very similar arguments in *United States v. Whitfield*, No. 14-3345, and do so here for the same reasons expressed in that opinion.